IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BRYANT BULLOCKS** )<br>  )<br>  Plaintiff, )<br>  )<br> v. )<br>  )<br> CITY OF CHICAGO, Chicago Police )<br> Officer J.W. Hoffman, Star No. 19110, )<br> J.S. Weyforth, Star No. 12186, an unknown )<br> number Of unnamed Chicago Police, )<br> Thomas Dart, in his official capacity as )<br> Sheriff of Cook County, and an unknown )<br> number of unnamed Cook County )<br> Correctional Officers )<br>  **Defendants.** ) | Case No: 08 C 1645<br><br>JUDGE ST. EVE |

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Plaintiff VANCE ESTES, by his counsel Garrett Browne, submits the following opposition to Defendants' Motion For Protective Order.

1. On June 3, 2008, Defendants City of Chicago, Hoffman, and Weyforth filed a Motion for A Protective Order.

2. Plaintiff objects to various provisions of Defendants' proposed Protective Order.

3. Defendants' proposed protective order attempts to address three discrete kinds of documents: 1) Medical Records; 2) Personnel Files; and 3) Complaint Registers/disciplinary documents.

4. Plaintiff does not object to the concept of maintaining medical records confidential. However, the only medical records that will likely be at issue in this case are those

belonging to plaintiff as he is the only person involved in this incident that received any medical treatment.

5.   With regard to the personnel files of the defendants' plaintiff does not believe it will be necessary to enter into a protective order.  Plaintiff will agree to defendants redacting any portion of any document from a personnel file document that contains a personal identifier of the defendants or any family member.  In the alternative, plaintiff will agree to a reasonable protective order that covers the personnel files of the defendants.

6.   The final category of documents, disciplinary files, should not be kept confidential.  Defendants' motion suggests, without stating, that disciplinary records such as complaint histories and complaint registers are part of the defendants' personnel files.  However, this is inaccurate.  Complaint Registers are records maintained by the Office of Professional Standards (OPS) and/or the Independent Police Review Authority (IPRA) completely separate from the defendants' personnel files maintained by the Chicago Police Department.  OPS and IPRA are two separate entities with their own files and record keeping procedures.

7.   In no reasonable sense can complaint registers be considered private, personal, or sensitive information belonging exclusively to the defendants.  On the contrary, these are quintessential public documents, documenting not only citizens' complaints of wrongdoing against police officers, but also the City's response to the complaints. The files are often generated at the initiative of members of the public, are created by a public entity, and regard the public activities of public employees.  Likewise, Complaint Histories merely list C.R.s instituted against an officer, including the date, the C.R. number assigned to the investigation, the category of alleged offense, and the disposition.  No good cause exists, after the redaction of personal information about officers, to censor such important public documents.

8. Under Fed. R. Civ. P. 26(c), "for good cause shown, the court in which the action is pending. may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Litigants seeking to conceal documents from public view have "the burden of showing that good cause exists warranting a limitation of discovery." Bell v. Woodward Governor Co., 2004 WL 3121301, at *3 (N.D. Ill. Dec. 20, 2004). The decision whether to limit discovery under Rule 26(c) is vested in the discretion of this Court. Wiggins v. Barge, 173 FRD. 226, 229 (N.D. Ill. 1997).

9. The standard by which to decide whether certain discovery should be limited via a protective order, good cause, "is difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action." In re Alexander Grant & Co. Litig., 820 F.2d 352, 356 (11th Cir. 1987). "In deciding whether good cause exists, the district court must balance the involved interests: the harm to the party seeking the protective order and the importance of disclosure to the public." Id. "The Seventh Circuit has made clear that a trial judge must make an independent determination of good cause prior to issuing a protective order, even if the parties submit an agreed protective order." Hollinger Intern. Inc. v. Hollinger Inc., 2005 WL 3177880, at *2 (N.D. Ill. Jan. 19,2005) (Nolan, J.). "Some factors to consider in making this determination are privacy interests, whether the information is important to public health and safety and whether the party benefiting from the confidentiality of the protective order is a public official. This list is not exhaustive and the court must consider the facts and circumstances of each case in making the good cause determination." Wiggins v. Burge, 173 F.R.D at 229, citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787-89 (3rd Cir. 1994).

10. The burden is placed on the party moving to shield information under a protective order because the courts, and the litigation they oversee, are presumed open. "The requirement of

good cause is based upon a fundamental premise that 'pre-trial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." <u>Culinary Foods. Inc. v. Raychem Corn.</u>, 151 F.R.D. 297, 300 (N.D. Ill. 1993) quoting <u>Wilk v. American Medical Association</u>, 635 F.2d *1295,* 1299 (7th Cir. 1980). In civil litigation, all documents are presumed subject to public review. "What happens in the halls of government is presumptively public business. Judges deliberate in private but issue public decisions after public arguments based on public records." <u>Union Oil Co. v. Leavell</u>, 220 F.3d 562, 568 (7th Cir. 2000), See also <u>Citizens First</u> <u>Nat'l Bank of</u> <u>Princeton v. Cincinnati Ins. Co.</u>, 178 F.3d 943, 944~45 (7th Cir. 1999) ("the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding"); <u>American Tel. & Tel. Co. v Grady</u>, *594* F.2d 594, 596 (7th Cir. 1978) ("pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceeding").

11. Public scrutiny of the court system serves at least three interests, including (1) promoting community respect for the rule of law, (2) providing a check on the activities of judge and litigants, and (3) fostering more accurate fact finding. <u>Grove Fresh Distributors. Inc. v. Everfresh Juice Co.</u>, 24 F.3d 893, 897 (7th Cir. 1994). The courts, therefore, are charged with the responsibility of protecting the public's interest in an open judicial process. <u>Citizens First Nat. Bank of</u> <u>Princeton</u>, 178 F.3d at 945. Under clear Seventh Circuit precedent, any doubts about whether documents should be shielded from public view *"must be resolved in favor of disclosure."* <u>Grove Fresh Distributors</u>, 24 F.3d at 897 (emphasis added).

12. A primary way for the public to oversee its police officers' behavior is to examine the complaints made against officers, and to examine the Department's response to those complaints. Such oversight is extremely important, as the workings of its police force is

a matter of paramount concern to the public. Auriemma v. Rice, 910 F.2d 1449, 1460 (7th Cir. 1990) (en banc) ("It would be difficult to find a matter of greater public concern in a large metropolitan area than police protection and public safety."); Glass v. Dacehl, 2 F.3d 733, 741 (7th Cir. 1993). If the public is not permitted to oversee Department investigations of alleged police misconduct, it will remain blind to, and possibly mistrustful of, the workings of law enforcement. See Richmond Newspapers. Inc. v. Virginia, 448 U.S. 555, 572 (1980) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing...")

    13.    Courts in this district recognize the importance of the public's ability to access information about its police force, and have accordingly rejected Chicago's attempts to categorically shield complaint files from public view. Doe v. Marsalis, 202 F.R.D. 233, 237-238 (ND. III. 2001) (Court determined that the public's interest "far outweighs" the City's privacy interests.); Wiggins v. Burge, 1 73 F.R.D. at 227-29 (Court permitted public disclosure of a number of C.R. files produced during discovery rejecting City's contentions in support of confidentiality and the notion that the public lacks interest in the files.); Doe v. White, 2001 WL 649536 (N.D. Ill. June 8,2001) ( "disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy.") (quoting *5* ILCS § 140/7(l)(b).

    14.  The privacy interests of the individual police officers, if any, are diminished because the Documents reflect on the officers' performance of their public duties. See Pansy v. Borough of Stroudsburg, 23 F.3d at 787 ("privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny"); Hawley v. Hall, 131 F.R.D. 578, 585 (D.Nev. 1990) ("The public interest in the conduct of public officials, elected and

appointed, outweighs the minimal harms tendered by the defendants as good cause in this case.").

15.     Ultimately, Defendants must present evidence of specific harm to establish good cause. At as it bears the burden of proof, the City should be required to present evidence of specific harm that it would suffer as a result of public disclosure of the Documents. To establish good cause, it must show that disclosure "will result in a clearly defined and very serious injury," Andrew Corp. v. Rossi, 180 F.R.D. 338, 341 (N.D. Ill. 1998) (Keys, J.). It must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n. 16(1981). Cinollone v, Liggett Group. Inc., 785 F.2d 1108, 1121 ( 3rd Cir. 1986) ("Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test."); Moriarty v. LSC Illinois Corp., 1999 WL 1270711, at *4 (N.D. Ill. Dec 29, 1999); Hill v. Northeast Illinois Regional Commuter R.R. Corp., 1992 WL 57951, at *2 (N.D. Ill. Mar.20, 1992). Therefore, the City may not attempt to categorically ban public dissemination of files. For each file it seeks to keep confidential, the City should be required to show exactly what content is so sensitive that its disclosure would cause definite harm to Defendants or certain non-parties, and produce a statement describing the specific harm.

16. A generalized claim that certain parties would be embarrassed by disclosure of files would not satisfy the good cause requirement. Stewart v. Kaplan, 1998 WL 10883, at 1 (N.D. Ill. Feb. 8, 1988) ("When the movant states that potential embarrassment is the movant's chief concern, the movant must demonstrate that the embarrassment will be particularly serious.") In any event, potential embarrassment is not a valid ground to issue a blanket protective order, particularly where it is undisputed that Plaintiff has a legitimate right to obtain the C.R. files at

issue here.  Culinary Foods. Inc. v. Ravchem Corn., 151 F.R.D. 297, 301 (N.D. Ill. 1993) ("A claim that public disclosure of information will be harmful to a defendant's reputation is not 'good cause' for a protective order"). Any potential embarrassment is merely an unintended consequence of the public's right to know what lies within the files.

17.     The defendants' reliance on the Illinois Personnel Records Review Act is misplaced.  The defendants' CR  files are not part of their personnel files by the Chicago Police Department – these files are maintained by OPS and/or IPRA.

18.      Moreover, even though the Illinois Personnel Records Review Act is applicable to the defendants' personnel files nothing in that Act prohibits their disclosure or otherwise requires confidentiality.  On the contrary, Section 7 of the act merely provides that prior to disclosure of materials contained in a personnel file the employee must be given written notice by the employer.  See 820 ILCS 40/7; *Bond v. Utreras,* 2007 WL 2003085, *4 (N.D. IL. 2007). Defendants have not cited any portion of that Act, or a case interpreting the Act , which requires confidentiality.

19.     The fundamental problem with defendants' motion is that they never, as is their burden, explain why this Court should enter a blanket protective order without a determination as to good cause why certain materials should be maintained as confidential.  Under Fed. R. Civ. P. 26(c), "for good cause shown, the court in which the action is pending. may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Litigants seeking to conceal documents from public view have "the burden of showing that good cause exists warranting a limitation of discovery." Bell v. Woodward Governor Co., 2004 WL 3121301, at *3 (N.D. Ill. Dec. 20, 2004).  "The Seventh Circuit has made clear that a trial judge must make an independent determination of good cause

- 8 -

prior to issuing a protective order, even if the parties submit an agreed protective order."
Hollinger Intern. Inc. v. Hollinger Inc., 2005 WL 3177880, at *2 (N.D. Ill. Jan. 19, 2005) (Nolan, J.).

      WHEREFORE, Plaintiff, respectfully requests that this Court deny defendants' motion for a protective order allowing defendants to designate as confidential Chicago Police Department C.R. files, Employee Complaint histories, and other information related to disciplinary actions and histories.

Respectfully submitted,

By: s/Garrett Browne

ED FOX & ASSOCIATES
Suite 330
300 West Adams
Chicago, IL. 60606
(312) 345-8877
gbrowne@efox-law.com